# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ATLAS DATA PRIVACY CORPORATION, et al. | No. 1:24-cv-04380-HB |
| Plaintiffs, | Hon. Harvey Bartle, III |
| vs. | |
| GOHUNT, LLC, et al., | |
| Defendants. | |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION COMPEL

**GREENBERG TRAURIG, LLP**
500 Campus Drive, Suite 400
Florham Park, New Jersey 07932-0677
Tel: (973) 360-7900
*Attorneys for Defendants GoHunt LLC,
GoHunt Management Holdings,
GoHunt Management Holdings II, LLC*

*On the Brief:*
David Sellinger, Esq.
Aaron Van Nostrand, Esq.

ACTIVE 712825772v4

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................1

FACTUAL BACKGROUND........................................................................................2

ARGUMENT .................................................................................................................4

    I.    The *Calder* "Effects" Test Does Not Apply in This Case Because Daniel's Law is Not An Intentional Tort. ...............................4

    II.   Even if the *Calder* "Effects" Test Applies, the Discovery Sought By Plaintiffs is Not Necessary to the Court's Analysis of that Test. ......................................................................................7

        1.    The *Calder* Framework and Its Requirements...........................7

        2.    *Hasson* and its Progeny Clarify that the "Effects" Test Requires that Defendant Expressly Aim Its Conduct to the Jurisdiction ....................................................................8

        3.    There is No Allegation That GoHunt Expressly Aimed Any Conduct at New Jersey, and the Discovery Sought by Plaintiffs is Not Required to Consider this Element............12

CONCLUSION............................................................................................................15

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Atlas Data Privacy Corp. v. We Inform, LLC*,
 758 F. Supp. 3d 322 (D.N.J. 2024) ................................................................................4

*Briskin v. Shopify, Inc.*,
 87 F.4th 404 (9th Cir. 2023) ........................................................................................12

*Calder v. Jones*,
 465 U.S. 783 (1984) .................................................................................................. 7, 8

*Click Go and Buy Inc. v. IT Assets, Inc.*,
 2024 WL 2744066 (D.N.J. May 28, 2024) .............................................................. 9, 10

*Hasson v. FullStory, Inc.*,
 114 F.4th 181 (3d Cir. 2024) .................................................................... 8, 9, 10, 11, 12

*IMO Indus., Inc. v. Kiekert AG*,
 155 F.3d 254, 265-66 (3d Cir. 1998) ............................................................... 8, 10, 11

*Ingrao v. AddShoppers, Inc.*,
 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024) ......................................................... 11, 12

*Lasala v. Marfin Popular Bank Pub. Co.*,
 410 F. App'x 474 (3d Cir. 2011) ..................................................................................14

*Marten v. Godwin*,
 499 F.3d 290, 298 (3d Cir. 2007) .................................................................................10

*Monturi v. Englewood Hospital*,
 246 N.J. Super. 547 (App. Div. 1991) ...........................................................................7

*Rhodes v. Azeff*,
 2025 WL 327297 (W.D. Pa. Jan. 22, 2025) .................................................................10

*Romaine v. Kallinger*,
 537 A.2d 284, 297 (N.J. 1988) .......................................................................................7

*Shuker v. Smith & Nephew, PLC*,
 885 F.3d 760 (3d Cir. 2018) .........................................................................................13

*Toys "R" Us, Inc. v. Step Two, S.A.*,
 318 F.3d 446, 454-55 n.5 (3d Cir. 2003) ......................................................................10

**Other Authorities**

*Restatement (Second) of Torts* § 825 cmt. a ............................................................................ 6

*Restatement (Second) of Torts* § 6 cmt. a ................................................................................. 6

*Restatement (Second) of Torts* § 18 cmt. e ............................................................................... 7

*Restatement (Second) of Torts* § 825 cmt. c ............................................................................ 6

*Restatement (Second) of Torts* § 8A cmt. b ............................................................................. 5

## PRELIMINARY STATEMENT

Plaintiffs seek additional discovery from Defendants GoHunt LLC, GoHunt Management Holdings and GoHunt Management Holdings II, LLC ("GoHunt") purportedly related to whether this Court may exercise specific personal jurisdiction over GoHunt. GoHunt already has produced documents and information regarding its contacts with New Jersey during the relevant time period as well as documents showing where GoHunt purchased the data regarding Covered Persons and the process by which the data appeared on GoHunt's website and phone application. The documents and information already produced by GoHunt are more than enough for Plaintiffs and the Court to assess whether GoHunt purposefully availed itself of the forum for purposes of determining personal jurisdiction.

But Plaintiffs want more. Under the guise of the *Calder* "effects" test, Plaintiff essentially seek discovery regarding whether GoHunt did, in fact, violate Daniel's Law and GoHunt's intent in allegedly doing so. But as explained in Defendants' Consolidated Brief in support of their motion to dismiss for lack of personal jurisdiction, the *Calder* "effects" test does not apply because Daniel's Law is not an intentional tort. Not only have Plaintiffs failed to allege anywhere in the Complaint that Daniel's Law is an intentional tort, this Court already has ruled that Daniel's Law imposes a negligence standard, not an intentional standard. Under

binding Supreme Court and Third Circuit caselaw, therefore, the *Calder* "effects" test does not apply here.

Nevertheless, whichever test for personal jurisdiction applies, Plaintiffs still are not entitled to any additional information. Plaintiffs only contend that GoHunt's responses to 3 interrogatories and 9 documents requests are deficient – the lowest number of disputed discovery responses asserted by Plaintiffs for any personal jurisdiction defendant. Further, Plaintiffs ignore that, during an individual meet and confer between counsel for the parties, GoHunt already advised Plaintiffs that it does not possess any information with respect to 1 interrogatory and 7 document requests that Plaintiffs claim are deficient. Thus, those discovery requests should not have even been included in Plaintiffs' motion. As to the remaining 4 discovery requests, as demonstrated below, they are not relevant to the analysis of either the purposeful availment or the effects tests. Plaintiffs' motion to compel should be denied.

## FACTUAL BACKGROUND[1]

GoHunt was forthcoming in its interrogatory responses and produced 270 pages of documents in response to Plaintiffs' jurisdictional discovery requests. These documents included detailed financial information, including sales in New Jersey; customer lists; GoHunt's contract with its data provider; GoHunt's contracts with entities in New Jersey; exemplars of GoHunt's advertising and marketing

---

[1] The facts in this section are supported by the Declaration of Aaron Van Nostrand.

2

materials; contracts with entities involved with GoHunt's Mapping App; a flow chart showing how address data flows from GoHunt's vendor into the Mapping App; documents demonstrating the removal of New Jersey addresses from the Mapping App; and contracts with GoHunt's marketing partners. As demonstrated by the chart appended to Plaintiffs' motion to compel, GoHunt was more forthcoming in its responses than any other defendant who filed a personal jurisdiction motion. The information and documents provided by GoHunt is more than enough for Plaintiffs and this Court to evaluate whether GoHunt is subject to personal jurisdiction here.

Subsequent to this production, on June 11, 2025, counsel for Plaintiffs and GoHunt engaged in a meet and confer. During that meet and confer, counsel discussed each of GoHunt's discovery responses. For many of the discovery requests to which GoHunt asserted objections and did not provide documents or information, counsel for GoHunt advised that GoHunt did not have any documents or information responsive to the requests. The requests that fall into that category include Interrogatory 7 and Document Requests 5, 6, 10, 11, 12, 13 and 15. Plaintiffs improperly included those discovery requests in their motion to compel, but given that GoHunt does not possess any documents or information responsive to these requests, there is no reason for the Court to evaluate GoHunt's objections to those requests. The only discovery requests included in Plaintiffs' motion that the Court should evaluate are Interrogatories 8 and 10 and Document Requests 14 and 17.

3

# ARGUMENT

## I. The *Calder* "Effects" Test Does Not Apply in This Case Because Daniel's Law is Not An Intentional Tort.

Plaintiffs concede that the *Calder* "effects" test only applies to intentional torts. Plaintiffs contend that Daniel's Law triggers the *Calder* "intentional tort" standard because the underlying act of disclosing protected information is volitional. This argument disregards this Court's ruling that Daniel's Law is governed by a negligence standard. *Atlas Data Privacy Corp. v. We Inform, LLC*, 758 F. Supp. 3d 322, 341 (D.N.J. 2024) ("Daniel's Law must be read as imposing liability only if a defendant unreasonably disclosed or made available [information] after the statutory deadline had expired."). This ruling should foreclose Plaintiffs' reliance on the *Calder* "effects" test.

Even if the Court considers Plaintiffs' argument that Daniel's Law is an intentional tort, that theory should be rejected. Plaintiffs contend that even if liability under the statute arises from a failure to respond to an opt-out request, the initial act of "disclosing, re-disclosing, or otherwise making available" the information is deliberate—and that alone satisfies *Calder's* intent requirement. Pls.' Br. at 4–5. That argument misunderstands what constitutes an intentional tort. As a matter of black-letter doctrine, a voluntary act is not enough. Intentional tort liability requires that the defendant either desire the harmful result or know that the harm is substantially certain to occur.

4

The *Restatement (Second) of Torts* § 8A (1965) defines "intent" to mean that the actor either "desires to cause the consequences of his act" or "believes that the consequences are substantially certain to result from it." Comment a explains that intent refers not to the act itself, but to its consequences: "Intent … has reference to the consequences of an act rather than the act itself." (Emphasis added). For example, someone who knowingly discloses information does not act with tortious "intent" unless the person also intends—or is substantially certain—that the disclosure will cause legally cognizable harm.

Comment b reinforces this point by contrasting intent with recklessness and negligence. If the harmful consequence is only a possibility or risk—not a certainty—then the conduct is not intentional. "As the probability that the consequences will follow decreases ... the actor's conduct loses the character of intent." § 8A cmt. b. This distinction is critical. Under Daniel's Law, liability arises not from an intent to harm, but from the failure to act in response to a nondisclosure request. The legal duty arises from omission—and the mental state required is at most negligence, not intent.

Plaintiffs argue that Daniel's Law creates an intentional tort for purposes of *Calder* because it involves a volitional act—disclosure of protected information—even if the actor does not intend any harm. In Plaintiffs' view, some intentional torts require intent only as to the act, not its consequences. They cite *Restatement*

5

*(Second) of Torts* §§ 161 and 825, as well as common-law battery and disclosure torts, to support this theory. That argument misreads these sources. Section 161, which addresses continuing trespass, imposes liability for the continued presence of a structure or object "tortiously" placed on land. But "tortious" conduct under the Restatement includes negligence, recklessness, and strict liability. See § 6 cmt. a ("The word 'tortious' is appropriate to describe … an act which is intended … [or] negligent … [or] conduct … although no such harm is intended."). In other words, § 161 speaks to the character of the conduct—not the actor's mental state—and does not classify all such conduct as "intentional." Section 825, which defines "intentional" invasion in nuisance law, expressly adopts the § 8A standard. See § 825 cmt. a ("The rule stated in this Section is a special application of the rule stated in § 8A."). Under § 825, an invasion is "intentional" only if the actor (a) acts for the purpose of causing it, or (b) knows the invasion is substantially certain to result. *Id.* cmt. c ("It is not enough … that the actor realizes or should realize that his conduct involves a serious risk … He must either act for the purpose of causing it or know that it is resulting or is substantially certain to result."). Neither volitional conduct nor foreseeable consequences suffices. Both §§ 161 and 825 align with § 8A's core principle: intent refers to consequences, not conduct. Even if disclosure is deliberate, Daniel's Law does not impose liability unless the defendant failed to act

6

reasonably after receiving a nondisclosure request. That omission-based framework is rooted in negligence, not intent.

Plaintiffs also rely on common-law torts such as battery and public disclosure of private facts to argue that some torts require intent only as to conduct. But these examples do not support their position. In *Monturi v. Englewood Hospital*, 246 N.J. Super. 547 (App. Div. 1991), the court affirmed that battery requires intent to contact, not intent to harm. But battery is an exceptional tort: it involves direct physical intrusion, not consequences or foreseeability. *Restatement (Second) of Torts* § 18 & cmt. e (requiring only that the contact be "intended," not necessarily harmful). Daniel's Law, by contrast, is not a contact-based tort—it penalizes the unreasonable failure to delist or withhold private information, which is fundamentally different in character and structure. Similarly, *Romaine v. Kallinger*, 537 A.2d 284, 297 (N.J. 1988), addressed the public disclosure of private facts. While that tort does not require the publisher to intend that the disclosure be unreasonable, it does require intentional publication—not negligence or inadvertence in not responding to a takedown request.

## II. Even if the *Calder* "Effects" Test Applies, the Discovery Sought By Plaintiffs is Not Necessary to the Court's Analysis of that Test.

### 1. The *Calder* Framework and Its Requirements

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court held that personal jurisdiction was appropriate where a non-resident defendant committed an

7

intentional tort expressly aimed at the forum state, and the harm was primarily felt there. *Id.* at 789. The Third Circuit has adopted the following three-part test under *Calder*: (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum state; (3) The defendant expressly aimed the tortious conduct at the forum state. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 265-66 (3d Cir. 1998). In Section I above, we addressed the intentional tort requirement that by itself precludes application of the *Calder* test here. The "express aiming" prong also is essential. The Third Circuit has consistently emphasized that the *Calder* test "can only be satisfied if the plaintiff can point to contacts which demonstrate that the defendant expressly aimed its tortious conduct at the forum, and thereby made the forum the focal point of the tortious activity." *Id.* at 266 (emphasis added). *Hasson v. FullStory, Inc.*, 114 F.4th 181 (3d Cir. 2024), clarified the applicability of this test and how it relates to the purposeful availment analysis.

2. ***Hasson* and its Progeny Clarify that the "Effects" Test Requires that Defendant Expressly Aim Its Conduct to the Jurisdiction**

The Third Circuit's recent decision in *Hasson* clarifies that the *Calder* "effects" test and the traditional "purposeful availment" test for specific jurisdiction are analytically distinct but not mutually exclusive. The Court emphasized that the two tests are "cut from the same cloth" but "have distinct requirements." *Id.* at 189. Specifically, the *Calder* "effects" test:

> [R]equire[s] that the tortious actions of the defendant have a forum-directed purpose[—a requirement that] is not

8

> applicable in the more traditional specific jurisdiction analysis . . . . Unlike th[e] express requirement in the effects test, the traditional specific jurisdiction analysis simply requires that the plaintiff's claims arise out of or relate to the defendant's forum contacts. We do not agree with the argument that this traditional requirement is the equivalent of *the more demanding relatedness requirement of the effects test*.

*Id.* (emphasis in original)). Applying those principles, the *Hasson* Court found that the plaintiff had failed to establish jurisdiction under either test. Although the underlying claim there was wiretapping—a statutory tort with an intentional conduct requirement—the plaintiff's failure to plead express forum targeting defeated jurisdiction under *Calder*, and his inability to show that the claims "arose out of or related to" defendants in-forum contacts foreclosed jurisdiction under the traditional test as well. *Id.* at 190-92.

In the wake of *Hasson*, several district courts have applied its clarified framework for specific personal jurisdiction. In *Click Go and Buy Inc. v. IT Assets, Inc.*, 2024 WL 2744066 (D.N.J. May 28, 2024), the court applied the *Calder* "effects" test in light of *Hasson* to a fraud claim, i.e., an intentional tort. The court emphasized that "*Calder* requires more," and that a defendant is not subject to personal jurisdiction in the plaintiff's home state "as soon as the defendant learns what that state is." *Id.* at 8. The court noted that plaintiff's theory—that defendant "expressly aimed its tortious conduct" by directing fraudulent communications into New Jersey—failed because plaintiff's location was not known to defendant until

9

after the initial contact. As the court explained, "ultimately learn[ing]" of the plaintiff's location after the fact "does not, in this case, satisfy the 'effects' test's intentionality requirement." *Id.*(citing *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454-55 n.5 (3d Cir. 2003)). As in *Hasson*, the court stressed that "[t]he mere allegation that the plaintiff feels the effect of the defendant's tortious conduct in the forum because the plaintiff is located there is insufficient to satisfy Calder." *Id.* at 8 (quoting *IMO Indus.*, 155 F.3d at 263). Rather, a plaintiff must "point to other actions that adequately demonstrate[] that the defendants targeted (or 'expressly aimed' their conduct at) the forum, and thereby show that the forum was the focal point of the tortious activity." *Id.* (internal citation omitted). The court concluded that the brunt of plaintiff's harm may well have occurred in New Jersey, but that was not enough. "Because Plaintiff fails to show that Defendant 'manifest[ed] behavior intentionally targeted at and focused on the forum,'" jurisdiction was lacking. *Id.*at 8 (quoting *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007)).

In *Rhodes v. Azeff*, 2025 WL 327297 (W.D. Pa. Jan. 22, 2025), the court dismissed defamation claims for lack of personal jurisdiction, applying *Hasson.* Although the complaint plausibly alleged defamation and harm in Pennsylvania, it did not satisfy the express aiming prong. As the court explained, "'the mere posting of allegedly defamatory statements online will not suffice, as explained in *Hasson*.'" *Id.* (citing *Marten*, 499 F.3d at 299), the court reiterated that a plaintiff must point to

10

"additional facts connecting the defendant to the forum state other than the plaintiff's location at the time of the retaliatory conduct

In *Ingrao v. AddShoppers, Inc.*, 2024 WL 4892514 (E.D. Pa. Nov. 25, 2024), the court elaborated that, "[t]o satisfy the express aiming prong, the plaintiff must do the following: (1) 'show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum,' and (2) 'point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum.'" *Id.* (quoting *IMO Indus.*, 155 F.3d at 266) (emphasis added). While the complaint alleged wiretapping and tracking—both intentional torts—and asserted harm in Pennsylvania, the court found that plaintiffs failed to satisfy either component of the "express aiming" prong. Plaintiffs failed to identify any "specific activity indicating that [AddShoppers] expressly aimed its tortious conduct at the forum." *Id.* The court rejected plaintiffs' assertion that deploying tracking code across retail websites, some of which were accessible to Pennsylvania users, constituted intentional targeting. Quoting *Hasson*, the court noted that a software company does not expressly target Pennsylvania "simply by providing code for" a website accessible in the forum. *Id.* at 10 (quoting *Hasson*, 114 F.4th at 195-96). The plaintiffs attempted to distinguish *Hasson* by noting that AddShoppers had directly emailed them, unlike the software company in *Hasson*, which had no contact with the plaintiff. But the court was not persuaded. Even assuming those emails

11

were received in Pennsylvania, the court concluded that "mere interaction with a plaintiff who resides in the forum does not show conduct targeted at the forum itself." *Id.* (citing *Hasson*, 114 F.4th at 196). Echoing *Hasson*, the court declined to "presume express aiming from generalized internet activity" and reaffirmed that the express aiming element requires intentional, forum-focused conduct. 2024 WL 4892514, at *10–11.

There is no allegation in the complaint and Plaintiffs have not pointed to any contacts with New Jersey indicating that GoHunt expressly aimed tortious conduct at New Jersey and thereby made New Jersey the focal point of its activity related to this case. For this reason as well, *Calder* does not apply.[2]

### 3. There is No Allegation That GoHunt Expressly Aimed Any Conduct at New Jersey, and the Discovery Sought by Plaintiffs is Not Required to Consider this Element

Plaintiffs contend that GoHunt's responses to 3 interrogatories (7, 8 and 10) and 9 document requests (5, 6, 10, 11, 12, 13, 14, 15 and 17) are deficient and that those discovery requests seek information and documents relevant to the application of the *Calder* "effects" test. But Interrogatory 7 and Document Requests 5, 6, 10, 11, 12, 13 and 15 should be taken off the table because GoHunt already has informed Plaintiffs that they have no information or documents responsive to those requests.

---

[2] Plaintiffs' repeated references to *Briskin v. Shopify, Inc.,* 87 F.4th 404, 409 (9th Cir. 2023), *reh'g en banc granted, opinion vacated*, 101 F.4th 706 (9th Cir. 2024), *and on reh'g en banc*, 135 F.4th 739 (9th Cir. 2025), add no weight to their position. *Briskin,* a Ninth Circuit decision, is not controlling and is directly contrary to the Third Circuit's controlling law as recently articulated in *Hassan.*

That leaves Interrogatories 8 and 10 and Document Requests 14 and 17, but none of these requests seeks information relevant to whether GoHunt expressly aimed any actions at New Jersey.

Interrogatory 8:  This interrogatory seeks the identity of all of GoHunt's officers, employees, directors, contractors, vendors, etc. who had anything to do with any Daniel's Law takedown requests.  GoHunt responded with the identify of its Director of Finance, Scott Christiansen, who is the person designated by GoHunt as having knowledge regarding this issue.  The identity of all of the individuals and entities requested by Plaintiff is not necessary to the Court's evaluation of either the *Calder* "effects" test or the purposeful availment test.  Rather, this interrogatory simply seeks discovery to allow Plaintiffs to take additional discovery, which is improper.  "[J]urisdictional discovery is not a license for the parties to engage in a fishing expedition." *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 782 n.20 (3d Cir. 2018) (internal quotations omitted).  This is "all the more true after the 2015 amendments to the Federal Rules of Civil Procedure," which require discovery to be proportional to the needs of the case.  *Id.*  District courts "should take care to circumscribe the scope of discovery . . . to only the factual questions necessary to determine its jurisdiction," taking into account the proportionality factors under Rule 26(b)(1).  *Id.*  GoHunt's identification of  a person with knowledge of the relevant

13

facts is substantial compliance with this interrogatory and is proportional to the needs of the case.

Interrogatory 10:  This interrogatory demands that GoHunt admit that it violated Daniel's Law by identifying which addresses allegedly remained in its Mapping App more than 10 days after a Daniel's Law request was submitted.  This is the ultimate issue in the case, and it is not proper for Plaintiffs' to seek this admission under the guise of jurisdictional discovery.  *See Lasala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 478 (3d Cir. 2011) ("[T]his Court has cautioned against allowing jurisdictional discovery to serve as a fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery.") (internal quotations omitted).  In addition, the identification of these addresses in no way is relevant to the jurisdictional analysis under either the "effects" test or the purposeful availment test.  Disclosure of any addresses to users nationwide after a Daniel's Law request was submitted is not relevant to whether GoHunt targeted New Jersey, nor is it relevant to whether GoHunt expressly aimed conduct at New Jersey.  At most, this interrogatory seeks information regarding GoHunt's alleged *failure to act*, not an *intentional act expressly aimed* at New Jersey.  As set forth above, a failure to act is not instructive to the application of the *Calder* "effects" test.

Document Request 14:  This document request seeks GoHunt's internal communications evaluating the Daniel's Law takedown requests sent by Atlas's

14

assignees. But as the cases described above make clear, a defendant's conduct *after* receiving a communication from the forum state is not relevant to the evaluation of the "effects" test. Here, the complaint does not allege, and Plaintiffs have not pointed to any fact indicating, that GoHunt knew that any New Jersey resident was seeking the removal of his data from the Mapping App pursuant to Daniel's Law before GoHunt received the takedown requests in this case. Thus, GoHunt's internal deliberations *after* it received the takedown requests is wholly irrelevant to whether GoHunt purposefully availed itself of, or expressly aimed its conduct at, New Jersey.

Document Request 17: This document request seeks documents regarding GoHunt's preservation of documents in this matter, which Plaintiffs justify by arguing they want to see if GoHunt has any "gaps" in its production. But this request goes to liability, not to personal jurisdiction discovery, and there is no indication whatsoever that GoHunt failed to preserve documents. Thus, Plaintiffs are not entitled to these documents. *RP Healthcare, Inc. v. Pfizer, Inc.*, 2017 U.S. Dist. LEXIS 162380, at *9 (D.N.J. Sept. 29, 2017) (denying discovery request "because it is more akin to facts about liability rather than discovery about the personal jurisdiction issue").

## CONCLUSION

For the above reasons, Plaintiffs' motion to compel as to GoHunt should be denied.

>Respectfully submitted,
>**GREENBERG TRAURIG, LLP**
>
>By: */s David Sellinger*
>David Sellinger, Esq.
>Aaron Van Nostrand, Esq.
>500 Campus Drive, Suite 400
>Florham Park, NJ 07932
>*Attorneys for Defendants GoHunt LLC,*
>*GoHunt Management Holdings,*
>*GoHunt Management Holdings II, LLC*

Dated: July 14, 2025

16